■ FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant-Respondent, v ARTHUR ANDERSEN & Co., Respondent-Appellant.—Order of the Supreme Court, New York County (Martin Evans, J.), entered December 5, 1986, dismissing plaintiff's third amended complaint with leave to replead, is unanimously reversed, on the law, and the motion to dismiss the complaint denied, without costs. Cross appeals from so much of the orders of the Supreme Court, New York County (Martin Evans, J.), entered on or about October 7, 1986 and December 5, 1986, which granted plaintiff leave to replead, are dismissed as moot, without costs.

This is one of numerous actions commenced against Arthur Andersen & Co. (hereinafter Andersen), an international firm of certified public accountants, for its allegedly fraudulent certifications of the 1973 through 1976 annual financial statements of Frigitemp Corporation, a public company that was engaged in the construction and installation of specialized equipment for use in shipbuilding, hospitals, hotels and restaurants. Plaintiff, Fidelity and Deposit Company of Maryland (hereinafter Fidelity), is a surety company which had resumed writing surety bonds for Frigitemp, allegedly in reliance on Andersen's certifications of Frigitemp's financial statements. In March of 1978, Frigitemp filed a bankruptcy petition. In July of 1978, Andersen announced, in a letter to Frigitemp's

audit committee, that Frigitemp's financial statements for the years 1973 through 1976 "may be materially misstated and should not be relied upon" and that Andersen was therefore "withdrawing [its] reports on the Company's financial statements for the Calendar years 1973 through 1976." In May of 1979, Frigitemp was adjudicated bankrupt. When it became known that some of Frigitemp's officers and directors had engaged in misappropriation of funds and misrepresentation of Frigitemp's financial status, several lawsuits were filed by various creditors against Frigitemp and Andersen.

Fidelity commenced this action against Andersen in late 1979. After various delays and after filing a second amended complaint, the action was assigned to Justice Evans. Andersen moved to dismiss Fidelity's second amended complaint, which raised claims of negligence and fraud. On the basis of *Credit Alliance Corp. v Andersen & Co.* (66 NY2d 812), Justice Evans dismissed the negligence claim. He also dismissed the fraud claim with leave to replead due to plaintiff's failure to detail the circumstances of the fraud. Fidelity then filed a third amended complaint which Justice Evans also dismissed with leave to replead on September 30, 1986. Fidelity moved for a rehearing, and by order of November 26, 1986, the court granted rehearing but adhered to its decision to grant defendant's motion to dismiss. Plaintiff appeals from this order and defendant cross-appeals from so much of the orders of October 7, 1986 and December 5, 1986 as granted plaintiff leave to replead.

We find that the third amended complaint sufficiently states a cause of action in fraud. CPLR 3016 (b) requires that in an action for fraud the circumstances constituting the fraud shall be stated in detail. Our Court of Appeals has interpreted this provision as requiring "only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of and is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be 'impossible to state in detail the circumstances constituting a fraud' *(Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 194)." *(Lanzi v Brooks,* 43 NY2d 778, 780.) The third amended complaint accomplishes the result of informing defendant of the substance of plaintiff's claim and consists of much more than mere bare allegations of the elements of fraud without any supporting detail.

The complaint sets forth numerous examples of material misrepresentations, which from the facts pleaded can be in-

ferred to have been made intentionally or recklessly, concerning Andersen's certifications that Frigitemp's 1973 through 1976 financial statements reflected the company's true financial condition and were prepared in accordance with generally accepted accounting principles. For instance, plaintiff alleges that defendant, either in reckless or intentional disregard of generally accepted accounting and auditing standards by which an auditor must verify a company's records, recognized as revenue on the 1975 financial statement a claim for $5 million that Frigitemp asserted it had against a customer, Lockheed, for cost overruns on a contract. Andersen included this amount as realized revenue even though the claim had never been submitted to Lockheed and despite, among other things, defendant's failure to independently substantiate which cost overruns were attributable to Lockheed's breach of contract, as opposed to Frigitemp's inefficiencies of performance on the contract. Rather than verify this revenue on the basis of calculable accounting principles, Andersen primarily arrived at this figure based on the estimate by Frigitemp's counsel of what Frigitemp would likely get in settlement against Lockheed.

Another allegation of fraudulently or recklessly based revenue recognition is that defendant bowed to pressure from its client to recognize $3 million worth of income on a contract with General Dynamics on which hardly any work had been performed and basically only materials had been ordered. The allegations are that Frigitemp wished to employ the cost to cost percentage of completion method of accounting to justify recognizing this income, which defendant admitted in its own internal memorandum was not an appropriate method of accounting when very little work on a contract has been performed. Admittedly, on management's insistence, defendant then devised a method of computation, which defendant itself described as "extremely judgmental", by which it essentially granted the client its request to recognize a substantial amount of income on a contract not yet performed. These allegations and others in the complaint concerning defendant's method of verification of this income support the claim that defendant may have violated its obligation as an independent public auditor to maintain its independence from its client and to limit its function to verifying the client's figures, and not devising a speculative method of income calculation in order to meet the client's desires. That defendant resorted to such methods in order to justify inclusion of this $3 million supports a claim for fraud based either on intentional or grossly reckless misrepresentations.

Further allegations of fraud based on unsupportable verifications of Frigitemp's calculations concern defendant's acceptance of Frigitemp's claim that it was justified in reducing by over 40% the hours of labor required to perform a contract, which reduction had the effect of increasing the income to be realized on that contract. Verification of this claim was based primarily on management's assessment of the hours required, not an independent source of verification, and a visual inspection of the work facility by the partner in charge of the audit, who, to plaintiff's knowledge, had no engineering experience.

These and other allegations in the complaint are supportive of conduct grossly departing from generally accepted auditing and accounting standards by which a public auditor is obligated to conduct an audit. That they arise in the context of auditing a company known to be riddled with extremely poor internal controls, a past history of fraud and persistent behavior of violating generally accepted accounting standards more than amply supports a cause of action for fraud. Defendant was aware for instance that the company had such a cash flow problem that at one time it was not paying its Federal taxes. The defendant also learned that Frigitemp had sent to an auditor of one of its customers fictitious invoices and later destroyed them. The complaint refers to instances, supported by defendant's own internal memoranda, when defendant either neglected or delayed going to the board of directors' audit committee once it learned of the management's highly improper and weak accounting practices, acts contrary to the obligations of an independent auditor.

Clearly there are ample factual allegations indicating either defendant's knowing participation in Frigitemp's fraud or its making of grossly reckless misstatements sufficient to state an action for fraud. *(See, State St. Trust Co. v Ernst,* 278 NY 104, 112.) Not only is scienter pleaded and supported, but sufficient facts are also pleaded to demonstrate that defendant was aware that plaintiff was Frigitemp's leading performance bond underwriter and would therefore reasonably rely on defendant's certifications of Frigitemp's financial status before determining whether to bond Frigitemp's work. A cause of action in fraud having been stated, we therefore reverse Special Term's order dismissing the third amended complaint with leave to replead and dismiss defendant's cross appeal as moot. Concur—Kupferman, J. P., Ross, Carro, Rosenberger and Wallach, JJ.