WILLIAM M. JOEL, Professionally Known as BILLY JOEL, et al., Appellants, v FRANCIS X. WEBER, Also Known as FRANK WEBER, et al., Defendants, and BERMAN, SHAFFET & SCHAIN et al., Respondents.

First Department, May 14, 1991

## APPEARANCES OF COUNSEL

*Leonard M. Marks* of counsel *(Alan R. Friedman* and *Margo Scott* with him on the brief; *Gold, Farrell & Marks,* attorneys), for appellants.

*Richard S. Oelsner* of counsel *(Stephen M. Marcellino, Lisa M. Sgro* and *Don Abraham* with him on the brief; *Wilser, Elser, Moskowitz, Edelman & Dicker,* attorneys), for respondents.

## OPINION OF THE COURT

Ross, J.

This appeal presents the issue of whether the plaintiffs' allegations of fraud against an accounting firm, contained in the third amendment to their complaint, are sufficiently detailed to meet the pleading requirements of CPLR 3016 (b).

Mr. William Martin Joel, professionally known as Billy Joel (Mr. Joel), a New York State resident, is a successful recording artist and composer. In or about 1979, Mr. Francis K. Weber, also known as Frank Weber, commenced working for Home Run Systems, Inc., a management company, operated by Mr. Joel's then wife, Ms. Elizabeth Weber, who is Mr. Weber's sister. Thereafter, pursuant to various written management agreements between Mr. Joel and Mr. Weber, from September 1980 until August 1989, Mr. Weber acted as Mr. Joel's exclusive creative, business and financial manager and advisor. Further, Mr. Weber is the owner and an officer of Frank Management Inc. (FMI), a New York Corporation, organized in or about 1980, and it is the entity through which Mr. Weber conducted his management activities on behalf of Mr. Joel.

Subsequently, in August 1989, Mr. Joel terminated Mr. Weber.

In or about 1981, Mr. Weber hired the New York accounting firm of Berman, Shaffet & Schain (BSS) to provide Mr. Joel with, *inter alia,* quarterly statements of his financial condition. Pursuant to that retainer, BSS rendered such statements from 1981 until they were fired by Mr. Joel, shortly after he terminated Mr. Weber, in 1989.

By complaint, dated September 25, 1989, Mr. Joel and Electric Company Productions, Inc., a corporation, wholly owned by Mr. Joel (plaintiffs), commenced an action against 14 defendants, including Mr. Weber, FMI, Mrs. Lucille Weber, who is Mr. Weber's wife, BSS, Mr. Richard A. London, who is Mr. Weber's brother-in-law, and partnerships and companies, in which Messrs. Weber and London hold ownership interests, to recover damages, for, *inter alia,* fraud, conversion, breach of contract, breach of fiduciary duty, negligent management, and to obtain declaratory relief, including a declaratory judgment that the management agreement between Mr. Joel and Mr. Weber was properly terminated for cause. The complaint alleged, in substance, that defendant Mr. Weber misappropriated assets, by making large interest-free loans to himself

and/or partnerships be controlled, which have not been re-paid, and utilizing Mr. Joel's power of attorney to obligate Mr. Joel to large investments and guarantees of partnerships, in which Mr. Weber had a personal interest. Further, this complaint specifically asserted causes of action against the defendant accounting firm, BSS, for negligence, breach of contract, and aiding and abetting the fraud of defendants Mr. Weber and/or FMI.

Following the plaintiffs' service of a first amendment to the complaint, which added as defendants, six individual partners of BSS, whose names are Messrs. Michael S. Shaffet, Howard Schain, Barry H. Leifer, Richard S. Guralnick, William A. Lewis, and Gary Lerman, defendants BSS and the individually named partners moved to dismiss the three causes of action in the amended complaint against them. By order, dated April 6, 1987, since the IAS court found the causes of action for negligence and breach of contract sufficiently pleaded, it granted the defendants' motion only to the extent of dismissing the cause of action for aiding and abetting fraud, with leave to the plaintiffs to replead.

Thereafter, plaintiffs served a second, and then third amended complaint, asserting against defendants BSS and the individually named partners a new cause of action for common-law fraud, and a repleaded cause of action for aiding and abetting the fraud of defendants Mr. Weber and FMI. In response, those defendants moved to dismiss the cause of action for common-law fraud, upon the ground that the plaintiffs improperly added same to the amended complaint, without obtaining leave of the court, as required by CPLR 3025 (a) and (b), and to dismiss both causes of action for fraud, upon the ground that the plaintiffs failed to plead the fraud, with sufficient particularity to satisfy the requirements of CPLR 3016 (b). Plaintiffs cross-moved for leave to add the cause of action for common-law fraud to the third amended complaint. By order, entered November 21, 1990, the IAS granted the defendants' motion, and denied plaintiffs' cross motion. Plaintiffs appeal.

■ CPLR 3016, entitled: "Particularity in specific actions", states, in subdivision (b), that "[w]here a cause of action * * * is based upon misrepresentation, fraud * * * the circumstances constituting the wrong shall be stated in detail". The Court of appeals, in *Lanzi v Brooks* (43 NY2d 778, 780 [1977], *mot to amend remittitur granted* 43 NY2d 947, *rearg denied* 44 NY2d 733 [1978]), held that CPLR 3016 (b) requires only that

a cause of action for fraud set forth "the misconduct complained of * * * in sufficient detail to clearly inform a defendant with respect to the incidents complained of and is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be 'impossible to state in detail the circumstances constituting a fraud' *(Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 194)."

In the twenty-seventh cause of action to the third amended complaint, the plaintiffs allege, in substance, that BSS and the individually named partners defrauded them, by BSS submitting financial statements, in which those defendants knowingly or recklessly overvalued certain assets of Mr. Joel, although some of them were worthless, failed to identify related-party transactions, such as interest-free loans to defendant Mr. Weber and to Weber related enterprises, failed to include contingent liabilities, which were material to Mr. Joel's financial condition, and failed to disclose that Mr. Joel's copyrights were subject to a mortgage held by CBS. Further, those defendants knowingly or recklessly misrepresented to plaintiffs that they were independent accountants, acting solely in Mr. Joel's interests, although they were also the accountants for various Weber partnerships, and a BSS partner, defendant Mr. Howard Schain, had invested in one or more thoroughbred horse breeding partnerships, in which Mr. Weber was a general partner.

Plaintiffs have repleaded, in their third amended complaint, the cause of action for aiding and abetting fraud. In the twenty-eighth cause of action, plaintiffs allege, in substance, that BSS and the individually named partners aided and abetted defendants Mr. Weber and FMI in defrauding Mr. Joel, by knowingly permitting those defendants to use financial statements of Mr. Joel's financial condition prepared by BSS. In those statements, BSS knowingly or recklessly, *inter alia,* overvalued certain assets of Mr. Joel, failed to identify related-party transactions, failed to disclose certain liabilities as well as the uncollectibility of certain receivables, and failed to disclose BSS's own lack of independence. Further, plaintiffs allege that "[a]s a direct and proximate result of [BSS's] aiding and abetting of the fraud of Weber and/or [FMI], Joel was prevented from taking steps to avoid or minimize the losses and damages suffered by Joel due to the fraud".

For the purpose of opposing defendants' motion to dismiss the twenty-seventh and twenty-eighth causes of action, in

accordance with *Rovello v Orofino Realty Co.* (40 NY2d 633, 636 [1976]), plaintiffs submitted two evidentiary affidavits.

The first affidavit, dated December 12, 1989, was made by Mr. Joel. In said affidavit, he stated, *inter alia,* that defendants Mr. Weber and FMI handled all of his finances, Mr. Weber selected BSS to be his (Mr. Joel's) accountant, and "I relied on the statements prepared by [BSS] as accurate reports of my financial condition. Periodically, Weber showed them to me and used them to tell me how much I was worth. [BSS] was the only entity independent of Weber and Weber's related companies that I used to review any of my financial and/or investment data for the period from 1981 until 1989".

The second affidavit, dated January 11, 1990, was made by Mr. Michael Sammis, who is a New York certified public accountant, and a senior manager of the accounting firm of Ernst & Young. In his affidavit, Mr. Sammis stated he participated in the 1989 Ernst & Young inspection of the books and records maintained by defendants, Mr. Weber and FMI, for Mr. Joel, and "I reviewed the quarterly statements of financial condition that [BSS] prepared * * * on behalf of Joel and, on August 29, 1989, I met with Howard Schain, who was the [BSS] partner with principal responsibility for all matters that [BSS] handled for Joel. During the meeting, Mr. Schain informed me that Joel could not receive on the open market the amounts shown on the [BSS] Statements as the 'estimated current value' of Joel's investments * * *. Mr. Schain also told me during the August 29th meeting that the [BSS] employees involved in the quarterly review examinations of Joel's financial condition regularly spoke with Weber and other employees of [FMI], including Jim Pantzis, in connection with the review examination. Mr. Schain stated that [BSS] used information that Weber and [FMI] employees provided in connection with its preparation of Joel's financial statements. Finally, Mr. Schain stated that it was his understanding that Weber met with Joel periodically to explain the [BSS] statements to Joel".

Following Ernst & Young's inspection, Mr. Joel terminated Mr. Weber as well as BSS.

█ Since the defendants have moved to dismiss, for facial insufficiency, it is well-established law that a court, when deciding such a motion, must consider the plaintiffs' allegations, asserted in both the complaint and any accompanying affidavits submitted in opposition to the motion, "as true and

resolve all inferences which reasonably flow therefrom in favor of the [plaintiffs]" *(Sanders v Winship,* 57 NY2d 391, 394 [1982]; *see also, Kaufman v Kaufman,* 135 AD2d 786, 787 [1987]; *Apple Records v Capitol Records,* 137 AD2d 50, 59 [1st Dept 1988]).

Our examination of the record indicates that BSS conducted unaudited reviews of Mr. Joel's finances, rather than a certified audit. Recently, the Court of Appeals, in *Iselin & Co. v Mann Judd Landau* (71 NY2d 420, 424-425 [1988]), described the differences between these two accounting techniques, in pertinent part:

"Preliminarily, we note that a Review Report is not to be equated with the traditional certified audit. The latter requires the auditor's certification that the audit was performed under generally accepted accounting standards (GAAS) to ensure that the financial statements and the underlying information contained in those statements are reliable, and that the statements were prepared according to generally accepted accounting principles (GAAP). Reviewing and reporting a client's financial statements is a relatively new accounting procedure established in 1978 by the American Institute of Certified Public Accountants. The accountant's review is not performed under GAAS; no physical inventory is taken; the review consists principally of inquiries of the client's management and analysis of financial information supplied by the client. The report offers only the limited assurance that the accountant is not aware of any material modifications that should be made to the client's financial statements in order for them to conform with GAAP * * *.

"While the essential character of a Review Report thus differs from that of the traditional audit, the accountant nevertheless has a duty to exercise due care in performance of its engagement".

As discussed *supra,* plaintiffs allege in both of their fraud causes of action that defendants, BSS and the individually named partners, knowingly or recklessly made misrepresentations to Mr. Joel, relative to his financial condition. We have sustained a cause of action for fraud, based upon, *inter alia,* an accounting firm's recklessness in failing to independently verify the financial statements of a corporation, which soon after went bankrupt *(Fidelity & Deposit Co. v Andersen & Co.,* 131 AD2d 308 [1st Dept 1987]).

More than 50 years ago, in *State St. Trust Co. v Ernst* (278

NY 104, 112 [1938]), the Court of Appeals stated "[a] representation certified as true to the knowledge of the accountants when knowledge there is none, a reckless misstatement, or an opinion based on grounds so flimsy as to lead to the conclusion that there was no genuine belief in its truth, are all sufficient upon which to base liability. A refusal to see the obvious, a failure to investigate the doubtful, if sufficiently gross, may furnish evidence leading to an inference of fraud so as to impose liability for losses suffered by those who rely on the balance sheet. In other words, heedlessness and reckless disregard of consequence may take the place of deliberate intention".

■ After our examination of the relationship between Mr. Joel and BSS, as reflected by the record, we find that "relationship sufficiently intimate to be equated with privity" *(Empire of Am., Fed. Sav. Bank v Andersen & Co.,* 129 AD2d 990 [1987]). This finding is based upon, *inter alia,* Mr. Joel's assertion in his affidavit that "Weber selected [BSS] for me * * *. [BSS] has continuously performed accounting services for me, including preparing reports of my financial condition, from 1981 until 1989. During this time period I relied on the statements prepared by [BSS] as accurate reports of my financial condition". Further evidence of the intimacy of this relationship is found in the plaintiffs' allegation that BSS' fees, in connection with the services they performed for Mr. Joel, were paid with Mr. Joel's funds. In view of our analysis *supra,* we reject any contention that there was a lack of privity in the relationship between Mr. Joel and BSS.

■ The statements issued by BSS, relative to Mr. Joel's financial condition, contained a note discussing the use of a cost basis to approximate the current market value of certain assets. Based upon our examination of that note, we find that same cannot be classified as a disclaimer, since the wording of that note does not in any manner caution Mr. Joel not to rely upon the financial statement of which it was a part *(see,* for a discussion of disclaimers, *Danann Realty Corp. v Harris,* 5 NY2d 317 [1959]; *Magi Communications v Jac-Lu Assocs.,* 65 AD2d 727 [1st Dept 1978]). In fact, rather than being a disclaimer, we further find that this note conveys the unequivocal impression that it is a good-faith attempt to approximate current market value. Incidentally, *Danann Realty Corp. v Harris (supra,* at 320) states "where the complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud—either in the inducement or in the

execution—despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made".

Plaintiffs allege, as discussed *supra,* that BSS had a conflict of interest, since, while performing services for Mr. Joel, a BSS partner, Mr. Howard Schain, who was principally responsible for supervising Mr. Joel's account, "had invested in one or more thoroughbred horse breeding partnerships in which Weber was a general partner and [BSS] rendered accounting services to certain entities [controlled by Mr. Weber] in which Joel held investments". Significantly, in their amended answer to the third amended complaint, defendants admit both that Mr. Schain had made such investment, and BSS had performed such "accounting services to entities in which Joel invested."

■ The Court of Appeals, in *Edenwald Contr. Co. v City of New York* (60 NY2d 957, 959 [1983]), held "[p]ermission to amend pleadings should be 'freely given' (CPLR 3025, subd [b]). The decision to allow or disallow the amendment is committed to the court's discretion. *(Murray v City of New York,* 43 NY2d 400, 404-405.)"

CPLR 3025 (b), provides that a court may grant leave to amend pleadings "at any time". In *Daniels v Empire-Orr, Inc.* (151 AD2d 370, 371 [1st Dept 1989]), we detailed the procedure a court should follow in deciding a motion for leave to amend, and stated, in pertinent part: "[t]he analysis established by this court in *East Asiatic Co. v Corash* (34 AD2d 432, 436 [1st Dept 1970]) begins with a two-pronged test. First, the proponent must allege legally sufficient facts to establish a prima facie cause of action * * * in the proposed amended pleading. If the facts alleged are incongruent with the legal theory relied on by the proponent the proposed amendment must fail as a matter of law. * * * The next step is for the nisi prius court to test the pleading's merit. The merit of a proposed amended pleading must be sustained, however, unless the alleged insufficiency or lack of merit is clear and free from doubt".

In view of the fact that the parties are in the early stages of litigation, and discovery has not yet commenced, it is not surprising that defendants do not claim either prejudice or surprise by the instant motion for leave to amend. Generally, "[l]eave to amend the pleadings 'shall be freely given' absent prejudice or surprise resulting directly from the delay (CPLR

3025, subd [b]; *Fahey v County of Ontario,* 44 NY2d 934, 935)" *(McCaskey, Davies & Assocs. v New York City Health & Hosps. Corp.,* 59 NY2d 755, 757 [1983]).

Based upon our analysis of the facts and legal authority, *supra,* we find that the plaintiffs have sufficiently pleaded their causes of action for fraud and aiding and abetting fraud, since "[t]he third amended complaint accomplishes the result of informing * * * [defendants] of the substance of * * * [plaintiffs'] claim and consists of much more than mere bare allegations of the elements of fraud without any supporting detail" *(Fidelity & Deposit Co. v Andersen & Co., supra,* at 309). Moreover, we further find that scienter has been properly pleaded and supported, in view of the fact that the plaintiffs have set forth numerous factual allegations in those two causes of action, indicating that BSS and the individually named partners either knowingly or recklessly made misrepresentations, which Mr. Joel relied upon to his detriment *(see, Black v Chittenden,* 69 NY2d 665, 668 [1986]; *National Conversion Corp. v Cedar Bldg. Corp.,* 23 NY2d 621, 626 [1969]).

We have considered the other contentions of the parties, and find them to be without merit.

Accordingly, order, Supreme Court, New York County (Edward H. Lehner, J.), entered November 21, 1990, which granted the motion of defendants to dismiss the twenty-seventh and twenty-eighth causes of action to the third amended complaint, and denied the cross motion of plaintiffs for leave to amend that complaint to assert a claim of common-law fraud, is unanimously reversed, on the law, on the facts, and in the exercise of discretion, motion denied and cross motion granted, and the twenty-seventh and twenty-eighth causes of action reinstated in the complaint, with costs.

SULLIVAN, J. P., CARRO, ELLERIN and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on November 21, 1990, unanimously reversed, on the law, on the facts and in the exercise of discretion, motion denied and cross motion granted, and the twenty-seventh and twenty-eighth causes of action reinstated in the complaint, with costs.