U.S. Tsubaki Holdings, Inc. v Estes (2021 NY Slip Op 03273)





U.S. Tsubaki Holdings, Inc. v Estes


2021 NY Slip Op 03273


Decided on May 20, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 20, 2021

Before: Renwick, J.P., Manzanet-Daniels, Mazzarelli, Mendez, JJ. 


Index No. 651597/19 Appeal No. 13891 Case No. 2020-04004 

[*1]U.S. Tsubaki Holdings, Inc., etc., et al., Plaintiffs-Appellants,
v
Larry Estes, etc., et al. Defendants-Respondents.


Jenner & Block LLP, New York (Brian J. Fischer and Olivia G. Hoffman of counsel) and Jenner & Block, Washington, DC (Ian Heath Gershengorn, of the bar of the Commonwealth of Massachusetts and District of Columbia, admitted pro hac vice, of counsel), for appellants.
Cohen & Gresser LLP, New York (Daniel H. Tabak of counsel) and Honigman LLP, Detroit, MI (Jeffrey K. Lamb of the bar of the State of Michigan and State of Illinois, admitted pro hac vice, of counsel), for Larry Estes, Kevin Estes, Jeffrey DeBrabander, Christopher Estes and Central Conveyor Holdings, Inc., respondents.
Morgan, Lewis & Bockius LLP, New York (Brian A. Herman of counsel), for New State Capital Partners LLC, NS CCC Acquisition LLC and New State Management LLC, respondents.



Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered August 18, 2020, which, insofar as appealed from, granted defendants' motions to dismiss the amended complaint's first through fourth causes of action, unanimously reversed, on the law, with costs, the motions denied, and the amended complaint's first through fourth causes of action reinstated.
Crediting its allegations for purposes of this motion to dismiss (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151-152 [2002]), the amended complaint pleads, in considerable detail, that the individual Estes defendants (defendants Larry, Kevin, and Christopher Estes and Jeffrey DeBrabander) managed and ran plaintiff Central Conveyor Company, LLC (the Company), a close-knit family-run business. Each of the Estes defendants personally engaged in corporate misconduct. The misconduct was widespread and embedded in the Company's operations. In short, according to plaintiffs, kickbacks and timesheet fraud were how the Company ensured profitability. Hence, the complaint readily states claims against the Estes defendants (including their holding company, defendant Central Conveyor Holdings, Inc.) for fraud.
The complaint chiefly uses group pleading, as against the "Seller Defendants" (defendants NS CCC Acquisition LLC, Larry, Kevin, and DeBrabander) and all of the defendants more generally, in order to establish scienter of the Company's fraud. In fact, with respect to scienter, given the complaint's concrete allegations, plaintiffs' grouped allegations are largely superfluous, since knowledge of the fraud can be inferred from the detailed allegations of its pervasiveness (see AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC, 108 AD3d 444, 446 [1st Dept 2013]). In 2014, when the three New State entities (together New State) acquired a majority interest in the Company, the Estes defendants continued to run the Company's day-to-day operations, while New State (via NS CCC) majority-owned and had ultimate oversight over the Company, including for tax issues. New State took a direct hand in managing the Company, including through New State Management's contract to provide "management services" to the Company, and by appointment of several corporate officers. Crediting the complaint and given the pervasiveness of the alleged fraud, the complaint likewise states a claim against the New State entities for fraud (see Mateo v Senterfitt, 82 AD3d 515, 518 [1st Dept 2011]; Joel v Weber, 166 AD2d 130, 139 [1st Dept 1991]).
The complaint also makes some allegations relating to defendants' knowledge of and involvement in alleged unlawful practices, such as timesheet fraud, on "information and belief." But the complaint makes the allegations of the unlawful practices themselves based on actual knowledge. It is the known existence of those practices, as well as the alleged fact that they were a part of the Company's modus operandi, which is the source of the information and belief that defendants [*2]partook in or knew of those practices. Under the circumstances, plaintiffs' allegations based on information and belief permissibly support their fraud claims (see DDJ Mgt., LLC v Rhone Group L.L.C., 78 AD3d 442, 443 [1st Dept 2010]; Berkowitz v Molod, 261 AD2d 128, 129 [1st Dept 1999]).
Plaintiffs have adequately pleaded all of the elements of the aiding and abetting fraud claim against the "Non-Seller Defendants" (Christopher, New State Capital, and New State Management). "A plaintiff alleging an aiding and abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance" (Oster v Kirschner, 77 AD3d 51, 55 [1st Dept 2010]). As discussed, plaintiffs have adequately alleged the existence of an underlying fraud. Plaintiffs have also readily pled actual knowledge, which can, as discussed, be "discerned from the surrounding circumstances" (id. at 56).
The "substantial assistance" prong need not be very great and can be met by as little as "implor[ing]" the active tortfeasor to effect the fraud (AIG Fin., 108 AD3d at 447). Here, plaintiffs allege that each of the Non-Seller Defendants did more than this: all three were indispensable in moving the fraud to fruition, by, among other things, executing the PSA documents effecting the fraudulent sale.
Plaintiffs' fraud claims are not duplicative of their contract claim. Plaintiffs allege misrepresentation of numerous present facts, in the form of defendants' alleged breaches of various of the April 2018 Purchase and Sale Agreement's (PSA) representations and warranties (see Wyle Inc. v ITT Corp., 130 AD3d 438, 439 [1st Dept 2015]; First Bank of Ams. v Motor Car Funding, 257 AD2d 287, 291-292 [1st Dept 1999]). For example, the Seller Defendants warranted that the Company's accounting was accurate, but plaintiffs allege that those financials were fraudulently inflated. The Sellers warranted that the Company was in compliance with employment laws, but plaintiffs allege that the Company routinely engaged in timesheet fraud. The Sellers warranted that the Company had disclosed all audits and material contracts, but plaintiffs assert that defendants failed to disclose a pending Canadian tax audit and a $300,000 contract with a limited liability company owned by Larry. Moreover, the fraud claims are asserted against a distinct set of defendants from the contract claims. The Non-Seller Defendants were not parties to the PSA and thus plaintiffs do not sue them for breach of contract.
More fundamentally, the PSA specifically gave plaintiff U.S. Tsubaki Holdings, Inc., the right to sue for fraud. The PSA cannot be said to bar (as duplicative) a cause of
action which the PSA itself guarantees. Likewise, the PSA's various disclaimers cannot bar the fraud claim which, again, the PSA itself guarantees.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 20, 2021