[905 NYS2d 69]

Avi Oster et al., Appellants, v H. Stephen Kirschner et al.,
Defendants, and Philip L. Chapman et al., Respondents.

First Department, July 6, 2010

*Morrison Cohen LLP*, New York City (*Donald H. Chase* of counsel), for appellants.

*McManus, Collura & Richter, P.C.*, New York City (*Scott C. Tuttle, Jillian M. Amagsila* and *Anne P. Richter* of counsel), for Philip L. Chapman, respondent.

*Wolff & Samson PC*, New York City (*Russel D. Francisco* and *William E. Goydan* of counsel), for Lum, Danzis, Drasco & Positan, LLC, respondent.

## OPINION OF THE COURT

MANZANET-DANIELS, J.

In this case we are presented with the question of whether plaintiffs have adequately alleged claims of aiding and abetting fraud, breach of fiduciary duty, and conversion against a law firm that drafted the private placement memoranda (PPMs) soliciting investment in the Cobalt Multifamily entities, an admitted Ponzi scheme, whereby the main defendants, convicted criminals—one of whom was banned from the securities industry by the Securities and Exchange Commission (SEC)—were able to perpetrate a fraud resulting in over $22 million in losses to investors. We hold that at this prediscovery phase plaintiffs have alleged their fraud-based claims with the particularity required by CPLR 3016 (b).

Cobalt raised capital for its operations through the sale of securities to members of the public, including plaintiffs, who claim that as a result of defendants' fraud they lost virtually their entire investment. The scheme collapsed after the prime movers were indicted in March 2006. The complaint named as defendants the various attorneys and law firms who provided legal services to Cobalt, including the Lum firm and one of its partners, defendant Chapman. Specifically, these Lum defendants are accused of playing a key role in perpetrating the fraud by preparing private placement memoranda, as well as furnishing other legal services such as serving as escrow agent for the transactions. The complaint asserts claims against the professional defendants for conspiracy and aiding and abetting common-law fraud (second cause of action), conspiracy and aiding and abetting breach of fiduciary duty (fourth cause of action), conversion and conspiracy and aiding and abetting conversion (fifth cause of action), and violations of New Jersey Statutes Annotated § 49:3-71 (a) (seventh through eleventh causes of action).

Plaintiffs herein allege that they invested $1.9 million in Cobalt upon reliance on various misrepresentations and material omissions contained in the PPMs. The affirmative misrepresentations include statements in the PPMs that only subscribers who qualified as "accredited investors" within the meaning of Regulation D (17 CFR 230.501 *et seq.*) would be permitted to invest in Cobalt. Individuals who qualify as "accredited investors" under Regulation D include any natural person who individually or together with his or her spouse has a net worth in excess of $1 million or who individually has an annual income in excess of $200,000, or jointly with a spouse has an annual income in excess of $300,000 in each of the last two years and reasonably expects an income (or joint income) in the current year of at least that same amount. Contrary to the representation that the investment was only being offered to "accredited investors" as defined, units in Cobalt were in fact sold to investors who did not meet the relevant criteria. The PPMs also misrepresented the composition of the management team of Cobalt, asserting that William B. Foster ran the day-to-day operations and (in the December 2004 PPM) that defendant Mark Shapiro was merely a "consultant," when in fact Cobalt was alleged to have been run by Shapiro, a convicted felon, with the assistance of defendant Irving J. Stitsky, an admitted criminal with numerous convictions for securities violations who was banned from the securities industry.

The PPMs failed to disclose Shapiro and Stitsky's respective criminal histories. In December 1998, Shapiro pleaded guilty to one count of bank fraud and one count of conspiracy to commit tax fraud, and was sentenced to 30 months. His conditions of parole, upon release on September 24, 2003, included a prohibition against associating with any person convicted of a felony. In August 1998, based upon his involvement in the Stratton Oakmont "boiler room" operation, Stitsky consented to an SEC order finding that he had violated the antifraud provisions of the federal securities laws. This order barred him from association with any broker, dealer, investment company, investment advisor or municipal securities dealer and directed that he cease and desist from any future securities law violation. In a National Association of Securities Dealers (NASD) regulatory proceeding arising out of Stitsky's misconduct at Stratton Oakmont, Stitsky consented to be censured and publicly barred from the securities industry. In June 2000, Stitsky was indicted for his role in yet another securities manipulation scheme. In August 2001, Stitsky pleaded guilty to criminal charges including conspiracy to commit securities fraud and was sentenced in connection therewith to 21 months' imprisonment and a three-year period of supervised release. In the SEC administrative proceeding against him in that matter, Stitsky was again found to have violated the antifraud provisions of the federal securities laws, ordered to cease and desist from any future securities law violation, and barred from participating in a penny stock offering and associating with a broker or dealer. In August 1999, Stitsky was indicted for conspiracy to commit tax fraud, money laundering and tax fraud. In August 2001, Stitsky pleaded guilty to conspiracy to commit tax fraud. That same month, a criminal information was filed against Stitsky for making false statements, to which he pleaded guilty. In February 2002, Stitsky was sentenced to 33 months in prison and a three-year period of probation for both matters. In November 2003, Stitsky was indicted yet again for securities fraud, money laundering and conspiracy to commit securities fraud, mail fraud and wire fraud. Stitsky was released from prison in the fall of 2004.

Defendant Lum, Danzis is a New Jersey firm which was engaged by Cobalt to prepare the public placement memoranda used by Stitsky, Shapiro and the other defendants to solicit funds in furtherance of the Ponzi scheme. Defendant Philip Chapman is a partner in Lum, Danzis. The complaint alleges that Lum prepared three versions of the PPM: the first dated

December 29, 2003, the second dated July 2004, and the third dated December 15, 2004. The complaint also alleges that following an FBI raid on Cobalt offices in December 2005, an amendment was drafted to the December 2004 PPM and backdated to November 30, 2005 purporting to reveal Shapiro and Stitsky's criminal past. Plaintiffs allege that they received the second and third PPMs and invested in Cobalt based thereon. In addition to drafting the PPMs, the Lum firm served as escrow agent for the subscription documents. Subscribers, pursuant to the terms of the PPM, were required to forward to defendant Philip Chapman, at the Lum firm, certain "investor documents" identified in the PPM. Significantly, these documents contained certain representations concerning the subscribers' suitability for investing in Cobalt.

Plaintiffs allege that the Lum defendants had actual knowledge of the fraud perpetrated by Cobalt and that they substantially assisted in the perpetration of the fraud. The Lum defendants assert that they did nothing more than draft PPMs for a client, and that any misrepresentations contained therein are irrelevant to the question of whether they had actual knowledge that Cobalt was being operated as a Ponzi scheme. The Lum defendants do not seriously dispute that they had knowledge of Stitsky and Shapiro's criminal backgrounds. Indeed, discovery in the SEC proceeding, to which plaintiffs herein did not have access at the time they drafted the complaint, reveals that it was Shapiro who hired Chapman and the Lum firm and that Chapman was well aware of Shapiro and Stitsky's extensive criminal backgrounds, including the fact that Stitsky was banned from the securities industry. Yet, the Lum defendants claim that knowledge of Shapiro and Stitsky's criminal backgrounds, and knowledge of misrepresentations in the various PPMs—the admitted vehicle by which investment in the Ponzi scheme was carried out—does not sufficiently allege actual knowledge, at this prediscovery stage, that the Cobalt defendants were engaged in a Ponzi scheme.

■ We reject any such narrow formulation of the pleading requirements for fraud. A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance. This Court has stated that actual knowledge need only be pleaded generally, cognizant, particularly at the prediscovery stage, that a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind. Participants in a

fraud do not affirmatively declare to the world that they are engaged in the perpetration of a fraud. The Court of Appeals has stated that an intent to commit fraud is to be divined from surrounding circumstances (*see Eurycleia Partners, LP v Seward & Kissel, LLP,* 12 NY3d 553 [2009]). This is not, as defendants argue, constructive knowledge, but actual knowledge of the fraud as discerned from the surrounding circumstances. Plaintiffs, at this stage, have more than adequately satisfied the pleading requirements for actual knowledge.

Plaintiffs have also adequately alleged the element of substantial assistance. It is undisputed that the Lum defendants drafted three versions of the private placement memoranda, including, significantly, the amendment to the PPM revealing Shapiro and Stitsky's criminal past that was backdated to November 30, 2005, prior to the December 2005 FBI raid on Cobalt's offices. Preparation of PPMs constitutes "substantial assistance" (*see Nathel v Siegal,* 592 F Supp 2d 452, 470 [SD NY 2008] [applying New York law regarding substantial assistance]).

The case of *National Westminster Bank v Weksel* (124 AD2d 144 [1987], *lv denied* 70 NY2d 604 [1987]), relied on by defendants, is distinguishable. In *Weksel,* this Court determined that a plaintiff had not adequately alleged an aiding-and-abetting fraud claim against a law firm where, inter alia, "the transactions which plaintiff in hindsight describes as 'sham' were, so far as can be gathered from the complaint, completely unobjectionable at the time they were agreed to" (*Weksel* at 147). The recent case of *Art Capital Group, LLC v Neuhaus* (70 AD3d 605 [2010]) may also be differentiated. *Art Capital Group* involved allegations that an attorney had helped facilitate a "conspiracy" to defraud and unfairly compete with the plaintiffs by negotiating loan transactions, offering legal advice and counsel, and performing other acts within the scope of her duties as attorney. The claims of fraud and aiding and abetting fraud were also deficient for the additional and independent reason that the plaintiffs had failed to allege that any misrepresentations had been made to them. *Weksel* and *Art Capital Group* involved attorneys who had represented parties in transactions later found to be objectionable. Here, on the other hand, investments in Cobalt were from their inception objectionable because Cobalt was offered to investors who did not meet Regulation D criteria and was sold by persons not qualified to do so, and because the company was being run by convicted felons, one of whom was banned from the securities industry.

The PPMs authored by defendant attorneys were the means by which the Cobalt Multifamily entities were able to solicit funds for what is, by everyone's admission, a Ponzi scheme. The PPM is the very mechanism by which investments such as Cobalt are placed in the marketplace, and the admitted "but for" cause of plaintiffs' investment losses. Yet, defendants assert that "loss causation" is lacking because it has not been adequately pleaded that defendant attorneys had actual knowledge that their clients—whom they admittedly knew to be criminals, banned from the securities industry for engaging in fraudulent investment schemes—would operate the Cobalt Multifamily entities as a Ponzi scheme. If the facts and circumstances herein do not support an inference of actual knowledge, then it is doubtful that any action for aiding and abetting fraud could be sustained against attorneys who, like defendant attorneys, consciously chose to look the other way when their clients asked them to prepare the PPM for their next "investment" vehicle. To say that defendant attorneys merely furnished legal services to help solicit investments in the Cobalt Multifamily entities, and did not have knowledge of the fraud they helped perpetrate, is drawing distinctions based on gradations of knowledge that are simply not tenable. This Court cannot and will not endorse what is essentially a "see no evil, hear no evil" approach.

There is no principled distinction between this case and those involving auditors alleged to have falsely represented the financial health of companies and otherwise to be derelict in their duties as auditors. As this Court reasoned in *Houbigant, Inc. v Deloitte & Touche* (303 AD2d 92, 97-99 [2003]), a case alleging, inter alia, fraud against a company's auditors:

> "The language of CPLR 3016 (b) merely requires that a claim of fraud be pleaded in sufficient detail to give adequate notice . . .

> "Keeping in mind the difficulty of establishing in a pleading exactly what the accounting firm knew when certifying its client's financial statements, it should be sufficient that the complaint contains some rational basis for inferring that the alleged misrepresentation was knowingly made. Indeed, to require anything beyond that would be particularly undesirable at this time, when it has been widely acknowledged that our society is experiencing a proliferation of frauds perpetrated by officers of large

corporations, for their own personal gain, unchecked by the 'impartial' auditors they hired . . .

"Accordingly, plaintiffs here need not, at this time, establish the truth of their allegations that Deloitte was aware of severe irregularities in [the corporation's] financial statements resulting in misstatement of the corporation's net worth. They need only allege specific facts from which it is possible to infer defendant's knowledge of the falsity of its statements. This they have done."

Discovery subsequently obtained from the criminal action brought by the government against the Cobalt defendants buttresses plaintiffs' allegations of aiding and abetting a fraud. As just one example, Kevin S. Tierney, a mortgage banker and workout specialist who had been hired by Mark Shapiro to conduct due diligence on properties Cobalt was potentially interested in acquiring or investing in, testified to having certain conversations with defendant Chapman in which it is clear that Chapman was aware of Shapiro and Stitsky's criminal backgrounds, yet chose to look the other way. Tierney apparently testified that he found it "unbelievable" that Shapiro "could be involved with this active role without being disclosed in that document with all of his history . . . Mr. Stitsky in my view was radioactive. . . . I said to this attorney [Chapman], 'I don't know what role he [Stitsky] is involved in but I sure hope to God that you know what his role is and that you know what you are doing.'" During the same conversation, Chapman allegedly "suggested he was going to revise the memorandum because monies were being raised in escrow before the documents were out." Chapman also allegedly admitted to Tierney in this telephone conversation that he was aware of Shapiro's criminal history.*

■ We also reverse the second order appealed from, and reinstate plaintiffs' claims under New Jersey Statutes Annotated

---

* We recognize that a federal court in the Eastern District of New York has dismissed aiding and abetting claims against the lawyer defendants in a putative class action brought by investors in the Cobalt Multifamily entities (*see Rose Hightower et al. v Robert F. Cohen et al.*, CV 08-3229 [RJD] [ED NY, Sept. 30, 2009]). Since the court found that the operative fraud causing the plaintiffs' harm was the Ponzi scheme, it felt constrained to dismiss the aiding and abetting claims against the law firm defendants because plaintiffs had not alleged that the defendants had actual knowledge of the underlying fraud which caused harm to the plaintiffs. Plaintiffs herein sufficiently allege actual knowledge of the underlying fraud, i.e., the Ponzi scheme, and substantial as-

§ 49:3-71 (a). At this pleading stage plaintiffs have adequately alleged that the Lum firm and Chapman were liable as "agent[s] who materially aid[ed] in the sale or conduct" constituting the violation within the meaning of the New Jersey statute (§ 49:3-71 [d]; *see Braunstein v Benjamin Berman, Inc.*, 1990 WL 192547, *19, 1990 US Dist LEXIS 20922, *58-59 [D NJ 1990] [attorney within the ambit of *Pinter v Dahl* (486 US 622 [1988]) where he was instrumental in negotiating deal and drafted purchase agreement; fact that he did not receive remuneration in excess of legal fees not determinative since "a secondary party may be liable for the fraudulent sale of securities where the party aims to better the financial condition of another"]; *see also Abrahamsen v Laurel Gardens L.P.*, 276 NJ Super 199, 647 A2d 869 [Law Div 1993] [plaintiffs adequately set forth claim upon which relief might be granted for control liability under parallel provisions in Planned Real Estate Development Full Disclosure Act]).

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered April 23, 2008, which, to the extent appealed from as limited by the briefs, granted the motion of defendants Chapman and the Lum firm to dismiss the seventh through eleventh causes of action as against them, should be reversed, on the law, with costs, and those causes of action reinstated. The order of the same court and Justice, entered January 23, 2009, which granted the aforementioned defendants' motion to dismiss the second, fourth and fifth causes of action as against them, should be reversed, on the law, with costs, and those causes of action reinstated.

GONZALEZ, P.J., ANDRIAS, SAXE and RENWICK, JJ., concur.

Order, Supreme Court, New York County, entered April 23, 2008, reversed, on the law, with costs, and the seventh through eleventh causes of action reinstated as against defendants Chapman and Lum, Danzis, Drasco & Positan, LLC, and order, same court, entered January 23, 2009, reversed, on the law, with costs, and the second, fourth and fifth causes of action reinstated as against said defendants.

---

sistance. To the extent the federal court took a narrow view of the "actual knowledge" requirement under New York law, we respectfully disagree with the decision.