Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered August 8, 2012, which, insofar as appealed from, denied the motion of defendants Moore and Seychelles to dismiss the cause of action against them for aiding and abetting fraud, unanimously affirmed, with costs. Appeal by ICP Asset Management, LLC, ICP Securities LLC, and Institutional Credit Partners LLC from the aforesaid order unanimously withdrawn in accordance with the stipulation of the parties dated April 2, 2013.
Defendants Moore Capital Management, LP and Seychelles Ltd. (Moore) contend that plaintiff AIG Financial Products Corp. (AIG) failed to allege sufficient facts to establish a cause of action for aiding and abetting fraud. According to the first amended complaint, the underlying fraud was committed by the ICP defendants (ICP) when they entered into an arrangement with Moore to secure from it residential mortgage backed securities pursuant to a forward purchasing agreement. AIG, which had issued credit default swaps in connection with the collateralized debt obligations (CDOs) that those residential mortgage backed securities were associated with, claims that the forward purchasing agreement between ICR the collateral manager for the CDOs, and Moore, was purposely structured to deplete the *445 CDOs’ assets by setting the price for the mortgage backed securities at a level much higher than that justified by the deteriorating market for those products at the time in question, 2007 and 2008. Plaintiff asserts that ICP was required, pursuant to the indentures governing the CDOs, to obtain its consent before purchasing new collateral, and that it was defrauded when ICP failed to obtain such authorization before entering into the forward purchasing agreement.
With respect to Moore, the first amended complaint specifically alleges that it was privy to the indentures, and thus knew of AIG’s veto power over transactions such as the forward purchase agreement. Further, AIG alleged various facts intended to suggest that the forward purchase agreement was designed to defraud AIG. For example, it asserted that the CDOs themselves, which were the actual parties in interest to the forward purchase agreement, were not made signatories to the agreement. In addition, AIG alleged that the forward purchase agreement made little economic sense for the CDOs, since it promised to purchase mortgage backed securities from Moore at prices not commensurate with the foundering market for those products. The first amended complaint alleges that Moore did not obtain the securities in question independently, but rather that ICP “arranged for them to be acquired” by Moore. AIG further avers in the first amended complaint that Moore realized a large windfall as a result of its transactions with ICE Finally, AIG alleges that Moore participated in “swapping” with TOP certain mortgage backed securities in place of securities with respect to which AIG did exercise its right to veto, as a way of quashing AIG’s approval rights under the indenture agreements. While this allegation does not appear in the first amended complaint itself, it is apparent from papers submitted by the parties in connection with a related SEC enforcement action, which papers were considered by the motion court for purposes of amplifying the first amended complaint.
Moore asserts that the first amended complaint fails because it does not allege that Moore had actual knowledge of the facts supporting each and every element of the fraud cause of action against ICP It claims that, at best, the first amended complaint alleges that Moore had constructive knowledge of the facts, which it correctly notes is insufficient on an aiding and abetting claim (see CRT Invs., Ltd. v BDO Seidman, LLP, 85 AD3d 470, 472 [1st Dept 2011]). Moore further argues that AIG did not sufficiently allege that it substantially assisted ICP in carrying out its fraud, or that its conduct as alleged proximately caused damage to AIG.
*446 Initially, we note that ICP has not appealed the finding that AIG sufficiently pleaded a cause of action for fraud against it. Further, Moore has not challenged that aspect of the motion court’s order. Accordingly, we accept for purposes of this appeal that AIG has made out a claim for fraud, the necessary predicate to the cause of action against Moore for aiding and abetting.
While the allegations in the first amended complaint alone, if proven, would not definitively establish that Moore had actual knowledge of ICP’s efforts to defraud AIG sufficient to trigger aiding and abetting liability, that is not the standard on a motion to dismiss pursuant to CPLR 3211 (a) (7). This Court held in Oster v Kirschner (77 AD3d 51, 55-56 [1st Dept 2010]) that “[a] plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance. This Court has stated that actual knowledge need only be pleaded generally, cognizant, particularly at the prediscovery stage, that a plaintiff lacks access to the very discovery materials which would illuminate a defendant’s state of mind. Participants in a fraud do not affirmatively declare to the world that they are engaged in the perpetration of a fraud. The Court of Appeals has stated that an intent to commit fraud is to be divined from surrounding circumstances (see Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553 [2009]).”
Here the “surrounding circumstances” described in the first amended complaint permit the reasonable inference that Moore actually knew of ICP’s alleged fraud. AIG alleges not merely that Moore was a passive beneficiary of ICP’s largesse in purchasing its securities at well-above-market rates, but that Moore willingly turned a blind eye to evidence that the forward purchase agreement was a sham. At the pleadings stage, such an allegation is sufficient to state a claim for aiding and abetting fraud, since to hold otherwise would be to “endorse what is essentially a ‘see no evil, hear no evil’ approach,” which this Court has refused to do (id. at 57).
In any event, all that is needed to overcome a motion to dismiss a fraud claim is a rational inference of actual knowledge (see Houbigant, Inc. v Deloitte & Touche, 303 AD2d 92, 98 [1st Dept 2003]). Here, the allegations provide ample reason to believe that Moore was a willing conspirator with ICP against AIG. First, AIG asserts that there was an enormous economic incentive to Moore in entering into the forward purchase agreement, in realizing profits on the sale of mortgage backed securities that were almost too good to be true. One could reasonably *447 infer based on the allegations that the opportunity to realize such an unexpected windfall, considering the market conditions, would not be randomly bestowed on an innocent party, but rather that the party had to be knowledgeable as to why it was the recipient of such good fortune. Further, the “swaps” allegedly made between ICP and Moore were outside the ordinary course of the forward purchase agreement and suggest an even greater level of awareness by Moore that the former was attempting to do an end-run around AIG. Indeed, it can be inferred from the papers in the SEC action that Moore actually initiated the swaps.
The first amended complaint also supports the other necessary element of AIG’s aiding and abetting claim, which is that Moore must have provided “substantial assistance” to ICI^ in a manner beyond just performing routine business services (see CRT Invs., Ltd. v BDO Seidman, LLP, 85 AD3d at 472). For instance, AIG alleges that Moore implored ICP to begin the forward-purchasing arrangement when Moore realized that the market for mortgage backed securities was entering its decline. Further, Moore’s willing entrance into the “swaps” with ICP evinces a concerted effort on Moore’s part to help ICP avoid its obligation under the indentures to obtain AIG’s consent for each and every asset purchase on behalf of the CDOs.
Finally, we reject Moore’s contention that the first amended complaint fails to allege that its activities proximately caused injury to AIG. As alleged, Moore actively participated in the transactions at issue and moved assets into the CDOs at above-market prices to its benefit while leaving the CDOs with less money to repay the note holders. This allegedly caused a foreseeable increase in the risk that AIG’s payment obligations would be triggered.
We have considered Moore’s other contentions and find them unavailing. Concur — Gonzalez, P.J., Mazzarelli, Moskowitz, Renwick and Manzanet-Daniels, JJ.