[992 NYS2d 20]

Mill Financial, LLC, et al., Respondents, v George N. Gillett, Jr., et al., Defendants, and The Royal Bank of Scotland PLC, Appellant.

First Department, September 4, 2014

**APPEARANCES OF COUNSEL**

*Freshfields Bruckhaus Deringer US LLP*, New York City (*Marshall H. Fishman, Dana L. Post* and *Patrick D. Oh* of counsel), for appellant.

*Kasowitz, Benson, Torres & Friedman LLP*, New York City (*Paul M. O'Connor, III, Marc E. Kasowitz, Seth A. Moskowitz* and *Henry B. Brownstein* of counsel), for respondents.

### OPINION OF THE COURT

Renwick, J.

Plaintiffs Mill Financial, LLC and Mill Football Holdings, PLC (collectively Mill Financial) bring this breach of contract action against the former owners, and one creditor, of the Liverpool Football Club of the English Premier League (the Club). The complaint asserts claims against multiple entities related to George N. Gillett, Jr., but the instant appeal solely relates to claims against The Royal Bank of Scotland, PLC (RBS). Mill Financial asserts that RBS breached a tri-party intercreditor agreement (the Tri-Party Agreement) between Mill Financial, RBS and Wells Fargo Bank, N.A. Specifically, Mill Financial alleges that RBS enforced its interest under the terms of applicable loan documents without first providing written notice to Mill Financial. Mill Financial also brings a claim against RBS for breach of the implied covenant of good faith and fair dealing inherent in the Tri-Party Agreement.

As expected, the Tri-Party Agreement was preceded by several loans used to finance the purchase of the Club. First, on January 25, 2008, RBS and Wells Fargo extended approximately £235 million in credit (the RBS Credit Agreement) to Kop Football Holdings Limited (KFHL), certain of its subsidiaries,

George Gillett and Tom Hicks (the owners). The Club was a wholly owned subsidiary of Kop Football Limited (Kop Football), and Kop Football was a wholly owned subsidiary of KFHL. Second, under a related Term Loan Agreement, Mill Financial loaned $70 million to Gillett Football, LLC (borrower), secured by its 50% ownership interest in the Club.

Also, on January 25, 2008, RBS, Wells Fargo and Mill Financial entered into the Tri-Party Agreement. The Tri-Party Agreement memorialized and protected their rights as creditors holding security interests in the Club. Pursuant to section 7 of the Tri-Party Agreement, RBS, Mill Financial and Wells Fargo (collectively, the Gillett creditors) agreed to mutually notice certain events. Each Gillett creditor agreed to provide to all other Gillett creditors copies of any notice sent or received by each Gillett creditor relating to the Tri-Party Agreement. Further, section 7.7 required that the Gillett creditors provide each other with notice about any demands or enforcement actions that a Gillett creditor was planning to take under their respective loan documents.

By April 2010, after RBS had agreed to extend the repayment date of the Club's loans eight previous times, the Club again defaulted on the RBS Loan. On April 16 and April 30, 2010, RBS sent three letters to the Club (the side letters) that delineated the terms by which RBS would grant the Club its ninth, and allegedly final, extension. As per RBS's requested terms, KFHL, a parent company of the Club, and KFHL's subsidiaries agreed to appoint a new non-executive chairman to KFHL's board of directors. Under the terms of the side letters, RBS had the right to "approve" whomever was selected as chairman. In addition, the newly appointed chairman of KFHL controlled not only the composition of the KFHL's board, but also the boards of its subsidiaries. The side letters further required that by April 16, 2010, the owners and KFHL were to announce an intention to sell 100% of the shares in Kop Football or the Club, with the chairman leading the process. On April 30, 2010, after the terms of the side letters were met, RBS amended the RBS Credit Agreement for the ninth time.

By August 13, 2010, Gillett Football defaulted on the Mill Loan Agreement. In August 2010, Mill Financial approached RBS about Mill Financial repaying the Club's and Kop Football's debt to RBS. A managing director of RBS, Richard Holliday, allegedly informed Mill Financial that: (1) RBS would not sell the loans to Mill Financial because RBS wanted to remain a credi-

tor; and (2) the Club's board of directors would not approve the debt repayment if current ownership would remain. Mill Financial alleges that it made substantial efforts to purchase the Club. The second amended complaint alleges that Holliday verbally outlined an offer to Mill Financial, with the specific terms that would be acceptable to RBS. As per this alleged interaction, in September 2010, Mill Financial submitted a written proposal to buy the Club. Mill Financial offered to pay £100 million of the debt owed to RBS and to assume the remaining amounts of the RBS debt. RBS allegedly represented to Mill Financial that it would waive the £20 million "ticking fees" that, pursuant to the side letters, would accrue on certain specified dates until the loan facilities under the RBS Loan were repaid in full. Despite Mill Financial's efforts, it was unsuccessful in buying the Club. Mill Financial alleges that both RBS representatives and the Club's RBS approved chairman, Broughton, met with New England Sports Ventures in early September 2010. New England Sports Ventures purchased the Club just a month later, in October 2010. The complaint alleges that New England Sports Ventures paid a price that was significantly lower than Mill Financial's bid.

Initially, in November 2010, Mill Financial commenced this action solely against its guarantors, namely Gillett and its companies. A year later, in September 2011, Mill Financial added RBS as a defendant, alleging that (1) RBS breached the Tri-Party Agreement by taking control of the Club's board of directors via the side letters, without first providing written notice to Mill Financial; and (2) RBS breached the implied covenant of good faith and fair dealing inherent in the Tri-Party Agreement by taking control of the Club's board and selling the Club to New England Sports Ventures for a low price that covered only RBS's debt.

Defendant RBS moved to dismiss the claims asserted against it pursuant to CPLR 3211 (a) (1) and (7), on the grounds that Mill Financial failed to state a cause of action and that the terms of the Tri-Party Agreement foreclosed Mill Financial's claims. At some point in the motion process, Mill Financial wrote to inform the court that it had uncovered documents in its possession that showed that it had received copies of the proposed side letter terms, and the eighth and ninth forbearance agreements and side letters in April 2010. According to Mill Financial, Gillett provided these documents to it, not defendant RBS. Plaintiffs received the term sheet just after it was

signed, and received the draft of the eighth forbearance agreement and side letter on April 29, 2010, the day before they were signed. The motion court denied RBS's motion in its entirety (41 Misc 3d 1206 [A], 2013 NY Slip Op 51595[U] [2013]). This appeal ensued.

On a motion to dismiss pursuant to CPLR 3211 (a) (7), a court is obliged "to accept the complaint's factual allegations as true, according to plaintiff the benefit of every possible favorable inference, and determining only whether the facts as alleged fit within any cognizable legal theory" (*Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc.*, 10 AD3d 267, 270-271 [1st Dept 2004] [internal quotation marks omitted]). Moreover, dismissal pursuant to CPLR 3211 (a) (1) is warranted only if the documentary evidence submitted "utterly refutes plaintiff's factual allegations" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *see also Greenapple v Capital One, N.A.*, 92 AD3d 548, 550 [1st Dept 2012]), and "conclusively establishes a defense to the asserted claims as a matter of law" (*Weil, Gotshal & Manges, LLP*, 10 AD3d at 271 [internal quotation marks omitted]). If the documentary proof disproves an essential allegation of the complaint, dismissal pursuant to CPLR 3211 (a) (1) is warranted even if the allegations, standing alone, could withstand a motion to dismiss for failure to state a cause of action (*see McGuire v Sterling Doubleday Enters., L.P.*, 19 AD3d 660, 661 [2d Dept 2005]).

█ Initially, we find that Mill Financial has stated a cause of action for breach of contract. The motion court correctly concluded that the plain language of the Tri-Party Agreement required defendant RBS to give notice to Mill Financial of its demand that Mill Financial's collateral be sold, in exchange for forbearance from immediate default under the RBS Credit Agreement (*see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). RBS, a sophisticated party making a loan of approximately a half billion dollars, failed to limit the notice language to only "formal" enforcement actions (*id.*; *see Ashwood Capital, Inc. v OTG Mgt., Inc.*, 99 AD3d 1 [1st Dept 2012]).

█ We further concur with the motion court that the Tri-Party Agreement's preclusion of consequential damages does not constitute an irrefutable defense to Mill Financial's breach of contract claim. Contrary to RBS's allegations, Mill Financial alleges damages directly attributable to acts taken by RBS in an attempt to enforce its rights in contravention of the Tri-Party Agreement. As indicated, pursuant to section 7.7, the perform-

ance promised by RBS was to notify in writing to its fellow creditors of any action taken to enforce its debt instruments. As RBS concedes, the purpose of section 7.7 was to allow all creditors to contemporaneously enforce their rights in an orderly manner. Obviously, the value of the notice was Mill Financial's ability to protect its security interest. Yet, Mill Financial alleges that RBS's failure to provide written notice of its actions was part and parcel of RBS's strategy to wipe out Mill Financial's security interest in the Club, which was accomplished by taking control of the Club's board and forcing its sale below market value. Under the circumstances, this Court cannot say, as a matter of law, that Mill Financial's damages were an indirect loss that did not flow naturally from RBS's actions in contravention of the Tri-Party Agreement.

■ Likewise, we concur with the motion court's finding that Mill Financial did not waive any claims by virtue of the fact that it was in receipt of letters sent from RBS to the Club, which detail the terms under which RBS granted the Club repayment extensions and appointed a new non-executive chairman (the side letters). We agree that these letters do not negate any allegation that lack of formal notice caused Mill Financial any injury (*cf. Gordon v Dino De Laurentiis Corp.*, 141 AD2d 435, 436 [1st Dept 1988]). On this record, we find that Mill Financial's allegation that its ability to protect its security interest was impaired by RBS's failure to formally notify Mill Financial of its action taken pursuant to section 7.7 of the Tri-Party Agreement was not conclusively controverted.

■ We do agree, however, with RBS that the claim for breach of the covenant of good faith and fair dealing must be dismissed since it is duplicative of the breach of contract claim. Where a good faith claim arises from the same facts and seeks the same damages as a breach of contract claim, it should be dismissed (*Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce*, 70 AD3d 423, 426 [1st Dept 2010], *lv denied* 15 NY3d 704 [2010]). Mill Financial argues that the failure to give notice was the breach of contract, and the taking control and sale of the Club is the conduct giving rise to the good faith claim. However, as noted, the only damages flowing from the alleged failure to give notice are from the sale of the Club. The whole theory of the breach of contract action was that Mill Financial was prevented from taking steps to protect its collateral, i.e., stopping the sale of the Club. The conduct alleged in the two causes of action need not be identical in every respect. It is enough

that they arise from the same operative facts (*see Cerberus Intl., Ltd. v BancTec, Inc.*, 16 AD3d 126 [1st Dept 2005]).

Accordingly, the order of the Supreme Court, New York County (Eileen Bransten, J.), entered October 4, 2013, which denied defendant The Royal Bank of Scotland PLC's motion to dismiss the second amended complaint as against it, should be modified, on the law, to dismiss plaintiffs' cause of action for breach of the covenant of good faith and fair dealing, and otherwise affirmed, without costs.

MAZZARELLI, J.P., FEINMAN, GISCHE and KAPNICK, JJ., concur.

Order, Supreme Court, New York County, entered October 4, 2013, modified, on the law, to dismiss plaintiffs' cause of action for breach of the covenant of good faith and fair dealing, and otherwise affirmed, without costs.