William Doyle Galleries, Inc. v Stettner (2018 NY Slip Op 08743)





William Doyle Galleries, Inc. v Stettner


2018 NY Slip Op 08743


Decided on December 20, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 20, 2018

Richter, J.P., Tom, Mazzarelli, Gesmer, Moulton, JJ.


6954 653204/17

[*1]William Doyle Galleries, Inc., Plaintiff-Appellant,
v
Brett Stettner, Defendant, HSBC Bank USA, N.A., Defendant-Respondent.


Lichtenberg PLLC, New York (Barry Lichtenberg of counsel), for appellant.
McGlinchey Stafford, New York (Brian S. McGrath of counsel), for respondent.



Order, Supreme Court, New York County (Gerald Lebovits, J.), entered February 14, 2018, which granted defendant HSBC Bank USA, N.A.'s (HSBC) motion under CPLR 3211(a)(1),(5), and (7) to dismiss the complaint as against it and dismissed the action, modified, on the law, solely to reinstate the causes of action against HSBC for aiding and abetting fraud and aiding and abetting conversion, and to reinstate the action as against defendant Stettner, and otherwise affirmed, without costs.
In considering this motion to dismiss, we assume the facts stated in plaintiff's verified complaint to be true (Simkin v Blank, 19 NY3d 46, 52 [2012]), and give the pleadings the benefit of every possible favorable inference (Rivietz v Wolohojian, 38 AD3d 301 [1st Dept 2007]).
At an auction held by plaintiff on April 16, 2012, defendant Brett Stettner successfully bid on multiple antique watches and items of jewelry. Stettner presented a check dated May 16, 2012 for $425,750.00 as payment, which plaintiff declined to honor without a credit reference. Sometime after, William Caban, a vice president of defendant HSBC, contacted plaintiff and advised plaintiff that Stettner had a long-standing banking relationship with HSBC in the United States and Hong Kong, and that Stettner's account contained funds sufficient to cover the check. Plaintiff informed Mr. Caban that, in addition to his verbal assurance, plaintiff would require HSBC to submit a credit reference in writing.
Mr. Caban provided plaintiff with a letter on HSBC stationery on April 27, 2012, stating:
"In reference to your request for a credit reference, I have the following information to provide:
Brett Stettner currently has Commercial and Personal relationships with HSBC in the US and in HK for his various international business needs
The relationships have been established and in good standing since 2008
Worldwide the average balances can fluctuate from $1 MM US to $20 MM US
There have been no problems with the accounts as we have maintained a good standing relationship for over 4 years
We value the worldwide relationships Brett and his company have with us and continue to work closely to maintain this high level relationship."
In reliance upon HSBC's verbal and written representations, plaintiff released the jewelry and watches to Stettner. However, Stettner's HSBC check was rejected for insufficient funds, and plaintiff did not receive payment.
On August 14, 2015, Stettner was arrested and indicted for several thefts against auction houses in Manhattan, including the theft from plaintiff. On May 6, 2016, Stettner pleaded guilty to the charges filed against him. As part of his plea allocution, Stettner stated, "I presented a letter to [plaintiff] which I knew contained false information about my bank balances for the purposes of inducing [plaintiff] to give me [the watches and jewelry]."
"A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance" (Oster v Kirschner, 77 AD3d 51, 55 [1st Dept 2010]). In turn, the elements of an underlying fraud are "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (Genger v Genger, 152 AD3d 444, 445 [1st Dept 2017] [internal quotation marks omitted]).
Plaintiff sufficiently pleaded that there was an underlying fraud. It alleged that Stettner admitted in his plea allocution that he knowingly presented a letter containing false information about his bank balances to plaintiff, and that he did so in order to induce plaintiff to release the jewelry and watches to him. Plaintiff pleaded that it reasonably relied on the letter and its misrepresentations, and that it was injured as a result, since it did not receive payment.
We reject HSBC's argument that plaintiff's pleading of an underlying fraud was defective because it failed to plead the misrepresentation of a present or existing fact (see Roney v Janis, 77 AD2d 555, 556—557 [1st Dept 1980], affd 53 NY2d 1025 [1981]). Here, the HSBC letter made representations about Stettner's bank balances as they existed at the time the letter was written. Indeed, the HSBC letter explained that Stettner had "current[]" personal and commercial relationships with HSBC and that "[w]orldwide," Stettner's average balances "can fluctuate from $1 MM US to $20 MM US." We disagree with HSBC that the letter's use of the language "can fluctuate" precludes the letter from establishing a misrepresentation of a present or existing fact. The HSBC letter clearly represented to plaintiff that Stettner's accounts contained a minimum of $1,000,000, an amount that was specific, and that was sufficient to cover Stettner's $425,750.00 check. The letter was thus a statement of existing fact, as opposed to a "nonactionable opinion" or "a prediction as to future performance" (FMC Corp. v Fleet Bank, 226 AD2d 225, 225 [1st Dept 1996] [No actionable fraud where bank officer made statement that it "felt" that a particular line of credit would be adequate to cover its customer's debt to plaintiff]).
Plaintiff sufficiently alleged the element of actual knowledge. "This Court has stated that actual knowledge need only be pleaded generally . . . particularly at the prediscovery stage, [since] a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind. Participants in a fraud do not affirmatively declare to the world that they are engaged in the perpetration of a fraud" (Oster, 77 AD3d at 55—56; see also Chambers v Weinstein, 135 AD3d 450, 451 [1st Dept 2016]; AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC, 108 AD3d 444, 446 [1st Dept 2013]). Stettner admitted that he knew that the letter that he provided plaintiff contained false information about his bank balances. HSBC was the source of that letter, and had the means to verify if it was accurate [FN1]. Prior to providing the letter, HSBC verbally represented that Stettner and HSBC had a long-standing relationship and that his accounts contained funds sufficient to cover the check. These allegations are sufficient, on this prediscovery, pre-answer motion, to plead that HSBC knew that the letter contained misrepresentations about Stettner's accounts. Indeed, this Court has declined to " endorse what is essentially a "see no evil, hear no evil" approach'" when reviewing whether a cause of action for aiding and abetting fraud adequately pleads actual knowledge (AIG Fin. Prods. Corp., 108 AD3d at 446, quoting Oster, 77 AD3d at 57).
Plaintiff's allegations are also sufficient as to the element of substantial assistance, since plaintiff pleaded that "[b]ut for the verbal assurances by HSBC Vice President Caban and the HSBC Letter vouching for Stettner's financial and personal integrity, Stettner's scheme would [*2]have failed. Doyle released the Valuables only after HSBC's repeated representations . . ." (see Oster, 77 AD3d at 56, citing Nathel v Siegal, 592 F Supp 2d 452, 470 [SD NY 2008]).[FN2]
The cause of action for aiding and abetting conversion, which was based upon fraud, was timely under the six-year statute of limitations governing fraud (see D. Penguin Bros. Ltd. v City Natl. Bank, 158 AD3d 432 [1st Dept 2018]; Loeuis v Grushin, 126 AD3d 761, 764 [2d Dept 2015]).
This cause of action was also adequately stated by plaintiff. Aiding and abetting conversion requires the existence of a conversion by the primary tortfeasor, actual knowledge, and substantial assistance (see Dangerfield v Merrill Lynch, Pierce, Fenner & Smith, Inc., 2006 WL 335357, *5, 2006 US Dist LEXIS 7761, *17 [SD NY 2006]; see also Weisman, Celler, Spett & Modlin v Chadbourne & Parke, 271 AD2d 329, 330 [1st Dept 2000], lv denied 95 NY2d 760 [2000]). "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49—50 [2006]).
Plaintiff sufficiently alleged the element of an underlying conversion by Stettner, the primary tortfeasor. Plaintiff alleged that Stettner took physical possession of its property without paying for it, and thus exercised unauthorized dominion and control over it. Moreover, plaintiff alleged that Stettner obtained control over the property by misrepresenting his ability to pay for it.
Plaintiff's allegations are also sufficient as to HSBC's actual knowledge. Since actual knowledge that one is participating in a fraud may be alleged "generally" (Oster, 77 AD3d at 55—56; see also Chambers, 135 AD3d at 451; AIG Fin. Prods. Corp., 108 AD3d at 446), plaintiff's allegations that "HSBC had actual knowledge that the HSBC Account did not have sufficient funds to cover the HSBC Check, yet represented to [plaintiff] . . . that the HSBC Account held sufficient funds," are sufficient. We reject our dissenting colleague's contention that plaintiff has failed to allege that HSBC had actual knowledge of Stettner's plan to convert the property in the future. On this motion, plaintiff is entitled to the benefit of every favorable inference (Rivietz, 38 AD3d at 301). In addition to alleging that HSBC represented that Stettner's account was sufficient to cover the check despite its actual knowledge that the account did not contain sufficient funds, plaintiff clearly alleged that it required references from HSBC before it would honor Stettner's check. Taken together, these allegations are sufficient at this early, prediscovery, pre-answer stage to allege HSBC's actual knowledge that it had "aided and assisted the converter with culpable knowledge that [the property] did not belong to [him]" (Dangerfield, 2006 WL 335357, *5, 2006 US Dist LEXIS 7761, *18 [internal quotation marks and emphasis omitted]). The complaint's allegations provide a sufficient basis to infer that HSBC knew that its misrepresentations would cause Stettner to obtain plaintiff's property despite his inability to pay for it.
As to the element of substantial assistance, plaintiff sufficiently alleged this element by pleading that "HSBC's services to Stettner enabled his fraudulent conversion of the [watches and jewelry]," and that plaintiff would not have released the watches and jewelry to Stettner but for the verbal and written assurances provided by HSBC (see Oster, 77 AD3d at 56).
We reject HSBC's argument that its letter was merely a business service performed for Stettner that fails to evince its actual knowledge or substantial assistance. Stettner admitted that the letter contained false information about his accounts, and at this early pre-answer, prediscovery stage, we see no reason not to infer that HSBC also knew of the letter's falsities, an [*3]inference buttressed by HSBC's verbal assurance that preceded the letter [FN3]. HSBC's citation to Weisman, Celler, Spett & Modlin v Chadbourne & Parke does not assist it, since that case involved a motion under CPLR 3212 where we held that, "[b]ased upon the evidence obtained through discovery, the IAS court properly held that plaintiff could not establish that defendant knowingly aided in the conversion of the shares by their original owner" (271 AD2d at 330 [emphasis added and internal quotation marks omitted]).
As to the branch of HSBC's motion under CPLR 3211(a)(1), the only documentary evidence relied upon by HSBC is the letter it provided to plaintiff. The letter does not "utterly refute["] plaintiff's allegations as to the causes of action for aiding and abetting fraud or aiding or abetting conversion (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002). Rather, the letter is itself a component of the allegations forming the basis of these adequately stated causes of action [FN4]. The remaining causes of action as against HSBC were properly dismissed.
Since defendant Stettner did not seek dismissal, we modify to reinstate the complaint as against him.
We have considered plaintiff's and HSBC's other contentions and find them unavailing.
All concur except Tom, J.P. who dissents in a memorandum as follows:




TOM, J. (dissenting)


In this action, the complaint does not sufficiently allege facts to sustain the claims for aiding and abetting fraud or aiding and abetting conversion as against defendant HSBC Bank USA, N.A. Moreover, the documentary evidence refutes plaintiff's factual allegations (see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Mill Fin., LLC v Gillett, 122 AD3d 98, 103 [1st Dept 2014]). Accordingly, I dissent and would affirm Supreme Court's grant of HSBC's motion to dismiss the complaint as against it.
This action is part of the fallout of defendant Stettner's fraud scheme against several auction houses in Manhattan, through which he obtained possession of hundreds of thousands of dollars worth of watches and jewelry, and attempted to take possession of additional items worth millions of dollars.
Specifically, between 2012 and 2015, Stettner attended auctions and bid on valuable jewelry and watches. In each case, Stettner presented checks to the auction houses that were eventually rejected for insufficient funds. However, in connection with auctions he attended at Christie's and Sotheby's, Stettner never took possession of the jewelry.
With regard to plaintiff William Doyle Galleries in the instant action, on April 6, 2012, Stettner was the successful high bidder on a lot of items sold for the aggregate sum of $425,750.00. Stettner presented a check postdated for May 16, 2012 as payment, which plaintiff [*4]declined to honor without a credit reference. The complaint alleges that William Caban, a vice president at defendant HSBC Bank USA, N.A., contacted a employee of plaintiff and represented that Stettner had long-standing banking relationships with HSBC in the United States and Hong Kong and that Stettner's account was sufficient to cover the check. Plaintiff advised that it would require something in writing.
On April 27, 2012, Caban provided plaintiff with a letter from HSBC. In it, Caban stated that Stettner has relationships with HSBC in the US and Hong Kong for his "various international business needs"; HSBC and Stettner had a "high level relationship"; the valued "worldwide relationships" had been in good standing and there had been no problems with the "accounts" for four years (since 2008); and "[w]orldwide the average balances can fluctuate from $1 [million] to $20 [million]."
Thereafter, plaintiff released the jewelry and watches to Stettner. However, Stettner's check was rejected for presentment weeks later due to insufficient funds.
After Stettner's arrest and indictment in 2015, he pleaded guilty on May 6, 2016, to grand larceny in the second degree, criminal possession of stolen property in the second degree, attempted grand larceny in the first and third degrees, and scheme to defraud in the first degree. He was ordered to pay restitution, and was sentenced in accordance with a plea agreement. As part of his plea allocution, Stettner stated, "I presented a letter to [plaintiff] which I knew contained false information about my bank balances for the purposes of inducing [plaintiff] to give me [the items]."
Plaintiff commenced this action against Stettner and HSBC setting forth various causes of action against Stettner, including fraud, conversion, breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. In addition, plaintiff set forth four causes of action against HSBC: aiding and abetting fraud, aiding and abetting conversion, breach of the implied covenant of good faith and fair dealing, and detrimental reliance/promissory estoppel.
Initially, the causes of action for both aiding and abetting conversion and aiding and abetting fraud fail based on the documentary evidence submitted, and due to failure to plead critical allegations in the pleadings.
Pursuant to CPLR 3016, where a cause of action is grounded in misrepresentation or fraud, the circumstances constituting the wrong shall be stated in detail. Thus, although on a CPLR 3211 motion to dismiss we "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]), fraud based claims must meet this particularity pleading requirement.
Further, where documentary evidence "utterly refutes plaintiff's factual allegations" (Goshen, 98 NY2d at 326), dismissal is warranted. And, "[i]f the documentary proof disproves an essential allegation of the complaint, dismissal pursuant to CPLR 3211(a)(1) is warranted even if the allegations, standing alone, could withstand a motion to dismiss for failure to state a cause of action" (Mill Fin., LLC, 122 AD3d at 103).
The elements of aiding and abetting fraud are: 1) sufficient proof of an underlying fraud claim, 2) the rendering of substantial assistance in the commission of the fraud by the alleged aider and abettor, and 3) the alleged aider and abettor's actual knowledge of the fraud (Stanfield Offshore Leveraged Assets, Ltd. v Metropolitan Life Ins. Co., 64 AD3d 472, 476 [1st Dept 2009], lv denied 13 NY3d 709 [2009]).
The contents of the credit reference letter utterly contradict the allegations that the letter was fraudulent and that it provided substantial assistance to Stettner. While it is reasonable to infer that HSBC knew Stettner's balance on the account the check was drawn upon, the letter did not mention the specific balance or its sufficiency in any particular account. Instead, it referred only generally to Stettner's "average balances" in the plural on a "worldwide" basis. Thus, it failed to provide specific existing facts upon which a fraud could be perpetrated and it did not contain any false representation of an existing fact (see Auchincloss v Allen, 211 AD2d 417 [1st Dept 1995]). Indeed, stating a customer's average balances across multiple accounts and throughout the world is no guarantee or representation regarding the balance in one account at [*5]that time or, as relevant here, on a future date.
Significantly, the check here was postdated and first eligible for presentment several weeks after HSBC issued the letter, so it was impossible for the letter to state whether the balance would be adequate in the future because of possible withdrawal activity in the account during the interim. Thus, the documentary evidence does not support the majority's position that the complaint sufficiently alleges that plaintiff relied on the oral representations together with the subsequent letter. Nowhere does the oral representation or letter set forth a specific balance in the future upon which plaintiff could rely.
Nor could HSBC have possibly set forth a specific balance on a future date when the check was to be negotiated. This was Stettner's personal checking account from which he can withdraw funds at his sole discretion and at any time he pleases. Critically, at the time of HSBC's alleged representations there may have been sufficient funds in the account but the check issued by Stettner was postdated close to three weeks after HSBC's reference letter.
It would be improper and unreasonable to hold the banking institution responsible for an account holder withdrawing funds to bring the account below the amount of a postdated check when the bank clearly did not guarantee any such result. In any event, the documentary evidence coupled with the lack of further required detail of fraud on behalf of HSBC in the complaint require dismissal of the claim.
The majority's heavy reliance on Stettner's plea allocution does not change the analysis. Stettner's allocution was unspecific concerning the letter and ultimately inaccurate as the letter clearly made no representations about his specific bank balances on particular dates. To the extent Stettner himself planned to use the letter to later commit a fraud, this does not show that the letter itself misrepresented any facts or was written with the goal of substantially assisting the fraud, or that the bank had knowledge of the fraud. Indeed, at the time of the letter the bank could not have had knowledge of a fraud that was yet to occur for some weeks. It would appear Stettner as part of the fraud scheme withdrew funds from the account before the presentment date. Accordingly, the majority's conclusion that Stettner's allocution, which refers unspecifically to the fraud in the letter, without more could establish the bank's knowledge is belied by the documentary evidence and surrounding circumstances. It was Stettner's action that created the fraud and not HSBC's reference letter.
Thus, the cause of action for aiding and abetting fraud, predicated on the bank's issuance of a credit reference letter on behalf of the primary wrongdoer, is also barred by the lack of an underlying fraud and failure to assert that the bank had actual knowledge of the fraud (see Stanfield Offshore Leveraged Assets, Ltd., 64 AD3d at 476).
Moreover, the complaint is devoid of allegations identifying circumstances from which the bank's actual knowledge of the fraud could be discerned (see CDR Créances S.A.S. v First Hotels & Resorts Invs., Inc., 101 AD3d 485, 486-487 [1st Dept 2012]; Goel v Ramachandran, 111 AD3d 783, 792-793 [2d Dept 2013] [CPLR 3016 specificity requirement applies to allegation of actual knowledge of aider and abettor]). While plaintiff may be entitled to every favorable inference, the specific pleading requirements for fraud require plaintiff to have alleged detailed facts from which we can infer that HSBC knew of the fraud. This, plaintiff has utterly failed to do.
The majority erroneously states that the letter made representations about Stettner's bank balances at the time the letter was written. The letter merely stated Stettner's average worldwide balances across many accounts and noted that these balances can fluctuate. Nor did the letter represent that the account from which the check was written to plaintiff contained a "minimum" of $1 million as urged by the majority.
In light of plaintiff's request for a written credit reference before transferring to the primary wrongdoer the auction lots on which he was the successful bidder, the bank's alleged oral assurance that the primary wrongdoer had sufficient funds in his account to cover the check he had given plaintiff does not support the substantial assistance element of aiding and abetting (see id.). The oral representation did not induce plaintiff to accept the check and release the auctioned items to Stettner.
Critically, the majority's holding would subject banking institutions to potential liability [*6]any time they issue an accurate reference letter and the account holder later decides to withdraw funds to prevent the collection of an issued check. This would lead to an unreasonable and unjustifiable result.
The cause of action for aiding and abetting conversion fails to allege that the bank knowingly aided in the conversion (see Weisman, Celler, Spett & Modlin v Chadbourne & Parke, 271 AD2d 329 [1st Dept 2000], lv denied 95 NY2d 760 [2000]). Such claim requires an allegation that the aider and abettor knowingly aided in the commission of the underlying tort. A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession (Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006]). Here, however, the conversion had not yet taken place at the time of the letter, and there are no allegations that HSBC had actual knowledge of Stettner's plan to convert the property in the future. Contrary to the majority's position, HSBC did not misrepresent Stettner's ability to pay for the property from the account, and could not have guaranteed the balance in the account on a future date.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 20, 2018
CLERK



Footnotes

Footnote 1: Indeed, HSBC conceded its authorship of the letter during oral argument before the motion court. 

Footnote 2: While our dissenting colleague contends that HSBC's oral representations did not induce plaintiff to accept the check and release the jewelry and watches, these paragraphs of the complaint clearly allege that plaintiff relied on the oral representations together with the subsequent letter.

Footnote 3: This inference is consistent with giving the pleadings the benefit of every possible favorable inference (Rivietz, 38 AD3d at 301). In addition, it is consistent with our rejection of a "see no evil, hear no evil" approach to reviewing allegations of actual knowledge by an alleged aider and abetter of fraud (see AIG Fin. Prods. Corp., 108 AD3d at 446; Oster, 77 AD3d at 57).

Footnote 4: In the absence of any other documentary evidence on this prediscovery motion, we reject our dissenting colleague's contention that "it would appear" that Stettner withdrew funds from his account before the presentment date of the check. There is no record of Stettner's account withdrawals in the record before us. Accordingly, we have no basis upon which to draw that inference, particularly since this is a CPLR 3211 motion and all inferences must be drawn in plaintiff's favor.