Osang LLC v Nerfherder Distrib., LLC (2024 NY Slip Op 51131(U))

[*1]

Osang LLC v Nerfherder Distrib., LLC

2024 NY Slip Op 51131(U)

Decided on July 24, 2024

Supreme Court, New York County

Lebovits, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 24, 2024
Supreme Court, New York County

Osang LLC, Plaintiff,

against
Nerfherder Distribution, LLC, Defendant.

Index No. 655394/2023

Haynes and Boone, LLP, New York, NY (Amanda Laurel Gayer of counsel), for plaintiff. 
Wasserman Legal LLC, New York, NY (Jeffrey I. Wasserman of counsel), for defendant.

Gerald Lebovits, J.

This action arises from a sales and distribution agreement between plaintiff, Osang LLC, and defendant, Nerfherder Distribution, LLC. Under the agreement, plaintiff would sell Covid-19 at-home tests to defendant, and defendant would pay plaintiff's invoices and serve as a non-exclusive distributor of the tests. (NYSCEF No. 1 at 1 [summons and complaint]; NYSCEF No. 2 at 1 [distribution agreement]; NYSCEF No. 5 [purchase order].) Plaintiff sold 399,360 tests to defendant, for a total of $599,040. (NYSCEF No. 1 at 1.) Defendant acknowledged receiving the tests but allegedly defaulted on its obligations under the distribution agreement and sales contract by failing to pay the contract balance by December 1, 2022. (Id. at 2.) By letter dated February 2, 2023, plaintiff served a notice of default on defendant demanding that it pay the outstanding balance of the invoice by February 16, 2023. (Id.) Defendant allegedly has not made any payment in response and continues to owe plaintiff $599,040, as well as accrued interest. (Id.)
Plaintiff brought this action against defendant for breach of contract on October 31, 2023. (Id. at 1.) Defendant has asserted counterclaims that, as amended, seek damages for (1) breaching the distribution agreement, (2) breaching the implied covenant of good faith and fair dealing, and (3) breaching the mutual confidentiality agreement. (NYSCEF No. 43 at 8—13.)
On this motion, plaintiff moves under CPLR 3211 (a) (1) and 3211 (a) (7) to dismiss defendant's amended counterclaims. The motion is granted in part and denied in part.
DISCUSSION
I. Plaintiff's Arguments for Dismissal that are Common to All Three Counterclaims
In moving to dismiss, plaintiff raises two arguments that apply to all of defendant's counterclaims: (i) defendant did not satisfy a condition precedent to sue, and (ii) defendant's damages allegations are too speculative to support its causes of action. These arguments are unpersuasive.
A. The Condition Precedent Argument
Plaintiff claims that defendant failed to negotiate—a condition precedent to suit imposed by § 10.2 of the distribution agreement. (NYSCEF No. 2 at 8.) The court disagrees. This argument for dismissal rests on the documentary-evidence ground identified in CPLR 3211 (a) (1). Documentary evidence for these purposes includes "[j]udicial records, such as judgments and orders . . . [and] the entire range of documents reflecting out-of-court transactions, such as contracts, deeds, wills, mortgages, and even correspondence" and must be "essentially undeniable." (Amsterdam Hosp. Grp., LLC v Marshall-Alan Assocs., Inc., 120 AD3d 431, 432 [1st Dept 2014] [internal citations omitted].) Plaintiff presents WhatsApp messages as evidence that defendant did not negotiate. But even assuming those WhatsApp messages qualify as documentary evidence, they do not "conclusively establish[ ] a defense" to defendant's counterclaims, as required to obtain dismissal under CPLR 3211 (a) (1). (Leon v Martinez, 84 NY2d 83, 88 [1994].)
Plaintiff refers to a purported WhatsApp conversation between plaintiff and defendant from October 14, 2022, as evidence that defendant did not negotiate before bringing suit.[FN1]
(NYSCEF No. 48 at 10, 15.) Plaintiff claims that in these messages, defendant confronts plaintiff for submitting a bid to one of defendant's customers at a price lower than defendant's bid. Plaintiff claims that the conversation ends with defendant's saying "thank you for your message and the explanation it helps greatly to know we have a trusted partner in you." (Id.) Plaintiff asserts that the conversation does not qualify as a negotiation but is merely a question and response. Although plaintiff is correct that this conversation does not read like a negotiation, this conversation alone cannot conclusively establish the absence of any negotiation between the parties during the course of their dispute.
Plaintiff also points to a WhatsApp conversation in which plaintiff claims it was "not aware of Medair" to suggest that defendant failed to raise a dispute or negotiate before raising counterclaims. (NYSCEF No. 52.) Plaintiff presents many examples of conversations in its exhibits in which defendant supposedly failed to negotiate. But plaintiff does not provide a complete record of plaintiff and defendant's interactions. Plaintiff's exhibits cannot conclusively prove that defendant did not negotiate.
B. The Speculative Damages Argument
Plaintiff also attacks defendant's amended counterclaims on the ground that defendant fails to allege sufficiently that plaintiff's alleged breach of contract caused defendant damages—a necessary element of a breach-of-contract claim. (See 34-06 73, LLC v Seneca Ins. Co., 39 NY3d 44, 52 [2022] [internal citations omitted].) In particular, plaintiff asserts that defendant's damages for plaintiff's alleged breach of confidentiality, to the extent they are not expressly barred by the distribution agreement, are too speculative to state a cause of action.[FN2]
(See NYSCEF No. 48 at 18, citing Dworkin Constr. Corp. (USA) v Consol. Edison Co. of New York, 191 AD3d 596, 597 [1st Dept 2021].) The damages claimed here are not too speculative.
Defendant alleges that plaintiff, using defendant's confidential information, (1) contracted directly with defendant's customer Medair, eliminating the need for Medair to buy from defendant; and (2) participated in bidding to sell Covid tests below cost, including to the State of Connecticut, after approving defendant's stated intention to bid for the contract with Connecticut. [*2](NYSCEF No. 43 at 9—10.) Although in the pleading stage it may not be possible to calculate the exact damages defendant will face, defendant has alleged facts sufficiently specific to support a claim for damages that could ultimately be proven with reasonable certainly.
II. Plaintiff's Counterclaim-Specific Arguments for Dismissal
A. First Counterclaim: Breach of the Distribution Agreement
Defendant alleges on information and belief in its first counterclaim that plaintiff used its confidential information in violation of § 8.1 of the distribution agreement. (Id.) Plaintiff asserts that this supposedly conclusory allegation is insufficient to state a cause of action. (See e.g. Gordon v Dino De Laurentiis Corp., 141 AD2d 435, 436 [1st Dept 1988] ["[V]ague and conclusory allegations are insufficient to sustain a breach of contract cause of action"].) But defendant explains why it believes that plaintiff used its information—plaintiff allegedly contracted directly with Medair and also underbid defendant for the sale of Covid tests to buyers, including the State of Connecticut. (NYSCEF No. 43 at 9.)
Defendant also alleges that plaintiff violated § 3.2 of the distribution agreement by misstating the availability, and thus the price, of one-pack Covid tests. (NYSCEF No. 43 at 10 [amended counterclaims]; NYSCEF No. 2 at 3—4 [distribution agreement].) But that allegation conflates a misstatement of price with a misstatement of availability. Section 3.2 provides that the supplier may alter its prices with "30 days[] prior written notice to the [d]istributor." It does not require the supplier to notify the distributor when availability shifts. Furthermore, it would make little sense to require plaintiff to give a month's notice about changes in product availability. Numerous issues arise with the supply chain for medical equipment, and availability can fluctuate unexpectedly. (See NYSCEF No. 48 [mem. of law]; NYSCEF No. 49 at 1 [affidavit of Seungyeob Lee].) Therefore, this aspect of the first counterclaim is dismissed for failure to state a cause of action.
B. Second Counterclaim: Breach of the Covenant of Good Faith and Fair Dealing
Defendant's second counterclaim is based on a claimed breach of the covenant of good faith and fair dealing. If a breach-of-covenant "claim arises from the same facts and seeks the same damages as a breach of contract claim, it should be dismissed." (Mill Fin., LLC v Gillet, 122 AD3d 98, 104 [1st Dept 2014].) Like the first counterclaim, defendant's breach-of-covenant cause of action alleges that plaintiff (1) failed to negotiate, (2) used defendant's confidential information, and (3) misrepresented the price of Covid tests. (NYSCEF No. 43 at 8—12.) In addition, it redundantly states that defendant should be able to add plaintiff's sole owner as a third-party defendant in the action after it has an opportunity to take discovery, and that defendant has suffered damages. (Id. at 10, 12—13.) The second counterclaim is therefore subject to dismissal.
C. Third Counterclaim: Breach of the Mutual Confidentiality Agreement
Defendant alleges in its third counterclaim that plaintiff has violated §§ 3 and 6 of the parties' confidentiality agreement. Section 3 provides that "[t]he Recipient will keep all Information confidential and use it solely in connection with the Project." Defendant's allegations about a breach of § 3 duplicate its first counterclaim; that aspect of the third counterclaim is dismissed as duplicative. (NYSCEF No. 51 at 1.)
The branch of the third counterclaim based on an alleged breach of § 6 of the confidentiality agreement fares no better. Section 6 provides that "[t]he Recipient and its affiliates, parents and subsidiaries shall not circumvent and establish a direct or indirect relationship with its vendors or customers for the purpose to commercialize, market, sell or supply the products, limited to those listed in Exhibit A, for the duration of the Agreement and any subsequent supply agreement between Osang LLC and Recipient." (NYSCEF No. 51 at 1.) Plaintiff and defendant interpret this section differently. Plaintiff argues that the word "Recipient" refers only to defendant; defendant contends that "Recipient" could refer to either party. Defendant's reading of the contract would demand that plaintiff refrain from contracting with itself: If one replaces the word "Recipient" with "Osang," the agreement would insist that Osang not establish a direct or indirect relationship with Osang and Osang. That interpretation is [*3]illogical. This court concludes instead that plaintiff did not breach § 6 of the confidentiality agreement.
Accordingly, it is
ORDERED that the branch of plaintiffs' motion seeking dismissal of defendant's first amended counterclaim is granted only with respect to that aspect of the counterclaimed based on an allegation that plaintiff misstated pricing information, and otherwise denied; and it is further
ORDERED that the branches of plaintiffs' motion seeking dismissal of defendant's second and third counterclaims are granted, and those counterclaims are dismissed; and it is further
ORDERED that the parties appear before this court for a telephonic preliminary conference on August 9, 2024.
DATE 7/24/2024

Footnotes

Footnote 1: Plaintiff wrongly cites this conversation as being included in "Aff. Ex. 3 at October 14, 2022 messages." (NYSCEF No. 48 at 10, 15.) It is not. (See NYSCEF No. 52 [exhibit 3].) Nor is it otherwise contained in the record before the court on this motion.

Footnote 2: Section 7 of the distribution agreement bars recovering indirect damages, including those for lost profits and lost business opportunity. (NYSCEF No. 2 at 6 [distribution agreement]; NYSCEF No. 48 at 6 [mem. of law supporting motion to dismiss].) Defendant's claimed damages resulting from plaintiff's alleged misuse of defendant's confidential information, however, would come within the contract's "willful misconduct" exception to § 7's bar on indirect damages. (See NYSCEF No. 2 at 6.)